UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NATIONAL BANK OF KUWAIT, S.A.K.P., NEW YORK BRANCH | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. _____ |
| ALI CHOUDHRI a/k/a MOHAMMAD ALI CHOUDHRI | § § § § | |
| Defendant. | § § | |

## COMPLAINT

Plaintiff National Bank of Kuwait, S.A.K.P., New York Branch ("NBK") brings this action against Defendant Ali Choudhri a/k/a Mohammad Ali Choudhri ("Mr. Choudhri") and alleges as follows:

## INTRODUCTION

1. Plaintiff NBK seeks entry of a judgment enforcing Mr. Choudhri's obligations under an unconditional personal guaranty of an outstanding loan in the initial principal amount of $51,675,000.00 made by NBK to nonparty Galleria 2425 Owner, LLC ("Galleria 2425" or the "Borrower").

2. In May 2018, NBK loaned Galleria 2425 more than $51.6 million to purchase a commercial building in the Galleria area of Houston, Texas. As part of the transaction, non-party Bradley Parker ("Mr. Parker" or the "Guarantor") unconditionally guaranteed the debt (the "Guaranty") as Mr. Choudhri's agent or representative. Mr. Choudhri approved and ratified the Guaranty, then subsequently: (a) assumed the obligation from Mr. Parker; and (b) indemnified Mr. Parker for any and all obligations arising under the Guaranty and the related loan documents.

Messrs. Parker and Choudhri concealed these arrangements from NBK, which only became aware of the agreements through discovery in a related litigation.

3. The United States District Court for the Southern District of New York ("Southern District of New York") has already determined that Mr. Parker is liable for the entire debt owed to NBK under the Guaranty, including, as set forth therein, the principal amount of the loan, ordinary and default interest, and other fees and charges, including NBK's legal fees.

4. While seeking discovery from Mr. Parker in the New York proceedings, NBK learned, for the first time, that Mr. Choudhri negotiated and executed various agreements whereby he affirmatively: (i) approved and ratified the Guaranty; (ii) assumed all of Mr. Parker's obligations under the Guaranty; and (iii) agreed to indemnify Mr. Parker for any and all damages and losses he suffers related to the Guaranty.

5. As of November 17, 2025, the amount currently due to NBK under the Guaranty is $51,950,598.00, plus ongoing interest and attorneys' fees and costs. Having assumed the obligations under the Guaranty and related assumption documents, Mr. Choudhri is liable to NBK for all amounts outstanding under and related to the Guaranty, and NBK files this action to enforce that obligation.

**PARTIES**

6. Plaintiff National Bank of Kuwait, S.A.K.P., New York Branch is a banking corporation organized under the laws of Kuwait, acting through its New York branch, having an office in the United States at 299 Park Avenue, New York, NY 10171.

7. Defendant Ali Choudhri a/k/a Mohammad Ali Choudhri is an individual residing in Houston, Texas. Relevant to this lawsuit, Mr. Choudhri was formerly the 100% owner of non-party Galleria 2425, the Borrower under the guaranteed loan. Mr. Choudhri is also the principal of non-party Mr. Parker by virtue of various agency and assumption agreements. Through those

agreements, Mr. Choudhri agreed to assume Mr. Parker's guaranty obligations and indemnified him for them. Mr. Choudhri may be served with process at: (a) 1001 West Loop South, Suite 700, Houston, Texas 77027; (b) 4521 San Felipe Street, Unit 3201, Houston, Texas 77027; or (c) wherever he may be found.

## JURISDICTION AND VENUE

8. **Subject Matter Jurisdiction.** This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(2) because this is a civil lawsuit between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs.

9. **Personal Jurisdiction.** This Court has personal jurisdiction over Mr. Choudhri because Mr. Choudhri is a resident of and domiciled in Houston, Texas (within the bounds of the Southern District of Texas) and because the claims and causes in this action arise from Mr. Choudhri's acts or omissions in Houston, Texas.

10. **Venue.** Venue is proper in the Southern District of Texas under 28 U.S.C. § 1391(b) because Mr. Choudhri resides in the Southern District of Texas and because a substantial part of the events or omissions giving rise to the claims and causes in this action occurred in the Southern District of Texas.

## FACTUAL ALLEGATIONS

A. **NBK's $51.6 Million Loan to Galleria 2425**

11. On or about May 23, 2018, NBK made Galleria 2425 a loan in the principal amount of $51,675,000 (the "Loan") to purchase real property at 2425 West Loop South, Houston, Texas 77027 (the "Property"). The Loan had a maturity date of May 23, 2023.

12. The Loan is evidenced by a Loan Agreement (the "Loan Agreement"), Promissory Note (the "Note"), and Deed of Trust, Assignment of Leases and Rents and Profits and Fixture Filing (the "Deed of Trust" and collectively the "Loan Documents"). True and accurate copies of

the Loan Agreement, Note, and Deed of Trust are attached as **Exhibits A, B and C**, respectively. Several courts have held that the Loan Documents are valid and enforceable.[1]

13. The Loan Agreement provides that an Event of Default occurs if, *inter alia*, the Borrower (Galleria 2425) or the Guarantor (Mr. Parker) (a) fails to repay the Loan or (b) files a voluntary bankruptcy proceeding.[2] Upon an Event of Default, "the Debt and all other obligations of Borrower [Galleria 2425] and Guarantor [Mr. Parker] hereunder and under the other Loan Documents shall immediately and automatically become due and payable, without notice or demand."[3] "Debt" includes "the outstanding principal amount set forth in, and evidenced by, this Agreement and the Note, together with all interest accrued and unpaid thereon and all other sums due to Lenders in respect of the Loan under the Note, this Agreement, the Deed of Trust or any other Loan Document."[4]

### B. The Guaranty

14. Acting as Mr. Choudhri's agent or representative, Mr. Parker personally guaranteed the Loan (the "<u>Guaranty</u>"). A true and correct copy of the Guaranty is attached as **Exhibit D**. The Guaranty is governed by New York law.

15. The Guaranty provides that, "by reason of acceleration or otherwise," the "Guarantor [Mr. Parker, now Mr. Choudhri] absolutely, unconditionally and irrevocably

---

[1] *See, e.g.*, *National Bank of Kuwait, S.A.K.P., New York Branch v. Parker*, Case No. 24-CV-04324 (S.D.N.Y.), at ECF No. 40; *In re Galleria 2425 Owner, LLC*, Case No. 23-34815 (Bankr. S.D. Tex.), at ECF No. 565.
[2] Exhibit A at § 10.1.
[3] *Id.* at § 10.2.
[4] *Id.* at § 1.1.

guarantees to [NBK] the full and prompt repayment when due of . . . (b) [t]he entire Debt . . . (i) if Borrower [Galleria 2425] . . . commences a voluntary bankruptcy . . . ."[5]

16. The Guaranty further provides that Mr. Parker (now Mr. Choudhri) shall be responsible to pay NBK "all actual costs and expenses, including, without limitation, reasonable fees, disbursements and out-of-pocket reasonable expenses of attorneys and expert witnesses, incurred by [NBK] in enforcing [NBK's] rights under this Guaranty."[6]

17. Mr. Parker, acting as Mr. Choudhri's agent or representative, also "knowingly, voluntarily, intentionally, and unconditionally and irrevocably waive[d] any and all defenses of any and every kind to any action or proceeding brought to enforce th[e] Guaranty . . . except the single defense that Guarantor or Borrower [Galleria 2425] has actually paid the Guaranteed Amount to the holder of the Note."[7]

### C. Mr. Choudhri Assumed the Guaranty and Indemnified Mr. Parker

18. On July 9, 2018, Mr. Parker and Mr. Choudhri entered into an Agency Agreement (the "Agency Agreement"), a true and correct copy of which is attached as **Exhibit E**.

19. Section 1 of the Agency Agreement provides:

> Principal [defined as Ali Choudhri] hereby designates and appoints Agent [defined as Bradley S. Parker] as Principal's agent for the express purpose of acquiring and holding record title to the Investment Properties and acting on Principal's behalf in connection with the administration of the Investment Properties and Agent accepts such designation . . . . Notwithstanding that Agent holds record title to the Investment Properties and acts as Principal's agent with respect to the Investment Properties, Principal shall possess all of the benefits and burdens of ownership of the Investment Properties . . . . In furtherance of the preceding provisions, the parties hereto expressly provide as follows:
>
> (a) Principal hereby constitutes and appoints agent as nominee and agent for Principal with respect to the ownership of the Investment Properties, including the

---

[5] *Id.* at §§ 2(b), 6.
[6] *Id.* at § 2(d).
[7] *Id.* at § 5(c).

acquisition, management, operation and disposition of all or any portion of the Investment Properties as agent for Principal, the execution of documents or other instruments with respect thereto and the making or granting of any election, determination, waiver, consent or other similar action with respect thereto.

. . .

(d)    **Principal hereby ratifies, reconfirms and agrees to any actions of and any agreements and transactions entered into by Agent prior to the date of this Agreement on Principal's behalf** as its nominee and agent with respect to the Investment Properties.[8]

20.    The "Investment Properties" are defined to include, *inter alia*, the Property, and the "Agency Entities" are defined to include, *inter alia*, Galleria West Loop Investments II LLC, the parent of Galleria 2425.[9]

21.    The Agency Agreement also contains an indemnification provision, which provides:

**Principal shall defend, indemnify, and hold harmless Agent** and its shareholders, partners, members, officers, directors, employees, agents and representatives **from and against all claims, damages, losses and expenses (including attorneys' fees and litigation expenses) (collectively, "Losses")** which arise directly or indirectly from or in connection with Agent's performance of its obligations under this Agreement, including . . . (c) any and all liens or other encumbrances against a Investment Properties either created by Principal or Agent pursuant to Principal's or Principal's agent's express, written direction, **including any guaranty agreements executed by Agent**; . . . and (e) all other Losses . . . .[10]

22.    The Agency Agreement further provides that it "shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, legal representatives, successors and assigns, and may not be assigned in whole or in part by any party without the prior written consent of all other affected parties."[11]

---

[8] Exhibit E at § 1 (emphasis added).

[9] *Id.* at Recital A, Exhibit A.

[10] *Id.* at § 7 (emphasis added).

[11] *Id.* at § 13.

23. Finally, the Agency Agreement contains a survival provision, which provides that "[t]he provisions of . . . Paragraph 7 ["Indemnification"] shall survive the termination of this Agreement for any reason with respect to liabilities or obligations under such provisions that accrue or arise during the period of time that this Agreement, including any amendments, replacements or renewals of this Agreement, is valid and in effect."[12]

24. On August 15, 2019, Mr. Parker and Mr. Choudhri executed two Assignment of Membership Interests (the "Assignment of GWLI I" and the "Assignment of GWLI II" and collectively the "Assignments") and an Indemnification Agreement (the "Indemnification Agreement"). True and accurate copies of the Assignment of GWLI I, Assignment of GWLI II, and Indemnification Agreement are attached as **Exhibit F**.

25. In the Assignments, Mr. Parker assigned all of his interests in Galleria West Loop Investments I, LLC and in Galleria West Loop Investments II, LLC to Mr. Choudhri.

26. In the Indemnification Agreement, Mr. Choudhri agreed to indemnify Mr. Parker and to assume all Mr. Parker's obligations under the Guaranty:

> Assignee [defined as Ali Choudhri] indemnifies Assignor [defined as Bradley S. Parker] from any and all losses, costs, obligations, claims, causes of action or expenses in any matter arising out of or related to Galleria 2425 JV, LLC and Galleria 2425 Owner, LLC. **Specifically, Assignee [Mr. Choudhri] agrees to assume all personal guarantee obligations that Assignor [Mr. Parker] signed related to that certain loan agreement between National Bank of Kuwait, S.A.K.P. as lender and Galleria 2425 Owner, LLC as borrower**.[13]

27. Mr. Parker signed the Indemnification Agreement as Assignor and Mr. Choudhri signed the Indemnification Agreement as Assignee.[14]

---

[12] *Id.* at § 15.
[13] Exhibit F at p. 7.
[14] *Id.*

7

**D.     Galleria 2425 Failed to Repay the Loan and Commenced Voluntary Bankruptcy Proceedings Triggering Events of Default Under the Loan Documents and Mr. Choudhri's Guaranty Obligation**

28.     Galleria 2425 failed to repay the Loan when it became due.

29.     On July 5, 2023, Galleria 2425 filed a voluntary chapter 11 case in the United States Bankruptcy Court for the Southern District of Texas (the "First Galleria Bankruptcy").[15]

30.     Mr. Choudhri directed and authorized the First Galleria Bankruptcy.

31.     On November 1, 2023, the Bankruptcy Court for the Southern District of Texas ("Bankruptcy Court") *sua sponte* dismissed the First Galleria Bankruptcy for cause.[16]

32.     On December 5, 2023, Galleria 2425 filed a second voluntary chapter 11 case in the Bankruptcy Court (the "Second Galleria Bankruptcy" and together with the First Galleria Bankruptcy, the "Galleria Bankruptcies").[17]

33.     Mr. Choudhri directed and authorized the Second Galleria Bankruptcy.

**E.     The Parker Lawsuit**

34.     In April 2024, NBK sued Mr. Parker in the New York Supreme Court to collect amounts due pursuant to the Guaranty.[18]  Mr. Parker removed the lawsuit to the Southern District of New York.[19]

35.     On October 28, 2024, NBK moved for summary judgment, seeking a determination that Mr. Parker was liable on the Guaranty.[20]

---

[15] *In re Galleria 2425 Owner, LLC*, Case No. 23-60036 (Bankr. S.D. Tex.), ECF No. 1.

[16] *Id.*, ECF No. 105.

[17] *In re Galleria 2425 Owner, LLC*, Case No. 23-34815 (Bankr. S.D. Tex.), ECF No. 1.

[18] *National Bank of Kuwait, S.A.K.P., New York Branch v. Parker*, Case No. 652228/2024 (N.Y. Sup. Ct.), Dkt. 1.

[19] *National Bank of Kuwait, S.A.K.P., New York Branch v. Parker*, Case No. 24-CV-04324 (S.D.N.Y.), ECF No. 1.

[20] *Id.*, ECF No. 24.

36. On June 4, 2025, the Southern District of New York granted NBK's summary judgment (the "Parker Summary Judgment Order").[21]

37. In the Parker Summary Judgment Order, the Southern District of New York held, *inter alia*, that:

> It is undisputed that Galleria [2425] filed for bankruptcy. The guaranty unambiguously provides that, if Galleria [2425] files for bankruptcy, [Mr.] Parker owes NBK "the full and prompt repayment" of Galleria [2425]'s "entire Debt." . . . [Mr.] Parker doesn't dispute that he has failed to fully and promptly repay this debt, as required by the guaranty.
>
> NBK has also demonstrated an absence of any evidence of a viable defense.
>
> . . .
>
> In sum, there is no "genuine dispute[] surrounding any of the facts that are material" to NBK's claim for payment on the guaranty . . . so summary judgment is warranted.[22]

38. Mr. Parker moved for reconsideration of the Parker Summary Judgment Order.[23] The Southern District of New York denied that request.[24]

39. The Parker Summary Judgment Order is now final and unappealable.

40. After the entry of the Parker Summary Judgment Order, Mr. Parker produced copies of the Agency Agreement, the Assignments, and the Indemnification Agreement. NBK was unaware of those before they were produced.

**F.  Damages**

41. As of November 17, 2025, the total amount of the debt currently due under the Guaranty and owing to NBK is $51,950,597.68.

---

[21] *Id.*, ECF No. 40.
[22] *Id.*
[23] *Id.*, ECF No. 43.
[24] *Id.*, ECF No. 51.

42. Additional damages continue to accrue in the form of ongoing interest and attorneys' fees and costs, all of which constitute additional obligations under the Guaranty.

43. As of the filing of this Complaint, neither Mr. Parker nor Mr. Choudhri has paid any of the outstanding debt owed to NBK.

## CLAIMS FOR RELIEF

### First Claim for Relief
### Declaratory Judgment

44. NBK repeats and realleges each and every allegation contained in the preceding paragraphs and incorporates them by reference here.

45. An actual legal and substantial controversy exists between the parties regarding Mr. Choudhri's liability on the debt owed to NBK pursuant to the Guaranty, the Agency Agreement, the Indemnification Agreement, and the Parker Summary Judgment Order. The controversy is of sufficient immediacy to warrant judicial relief under the Declaratory Judgment Act, 28 U.S.C. § 2201.

46. Galleria 2425 borrowed $51,675,000.00 from NBK pursuant to the Loan Documents.

47. Mr. Parker guaranteed Galleria 2425's obligations under the Loan Documents by executing and delivering the Guaranty.

48. Mr. Choudhri assumed Mr. Parker's obligations under the Guaranty as agreed in the Agency Agreement and the Indemnification Agreements.

49. Mr. Choudhri also indemnified Mr. Parker against any claims or causes of action related to the Guaranty pursuant to the terms of the Indemnification Agreement.

50. The Southern District of New York has already determined that: (a) the money Galleria 2425 borrowed from NBK in 2018 has not been repaid; (b) the commencement of the

Galleria Bankruptcies and the occurrence of several other events of default triggered under the Loan Documents the immediate and unequivocal obligation for Mr. Parker to satisfy his obligations under the Guaranty; and (c) Mr. Parker lacks any defense. This determination is final and unappealable.

51. After the entry of the Parker Summary Judgment Order, Mr. Parker produced copies of the Agency Agreement, the Assignments, and the Indemnification Agreement. NBK was unaware of those before they were produced.

52. Accordingly, NBK seeks the following declaratory relief:

   a. Pursuant to the Agency Agreement and Indemnification Agreement, Ali Choudhri, a/k/a Mohammad Ali Choudhri, assumed all of Bradley S. Parker's obligations under the Guaranty, including, but not limited to, Bradley S. Parker's responsibility to pay NBK the entire debt owed by Galleria 2425 under the Loan Documents and all actual costs and expenses, including, without limitation, reasonable fees, disbursements and out-of-pocket reasonable expenses of attorneys and expert witnesses incurred by NBK.

   b. As of November 17, 2025, the total amount owed by Ali Choudhri to NBK under the assumption of the Guaranty is $51,950,597.68, with interest continuing to accrue at the maximum legal rate. Mr. Choudhri also remains liable for any attorneys' fees, costs, or disbursements NBK incurs in enforcing the Loan Documents, Guaranty, and this Judgment.

53. NBK further requests entry of a money judgment against Mr. Choudhri in accordance with the declarations above.

54. NBK further requests the Court order such specific performance as it deems necessary to carry out and effectuate the above requested declaration any other relief the Court determines to be fair and equitable under the circumstances, including an award of costs and reasonable and necessary attorneys' fees.

## Second Claim for Relief
## Breach of Contract

55. NBK repeats and realleges each and every allegation contained in the preceding paragraphs and incorporates them by reference here.

56. Mr. Choudhri assumed all of Mr. Parker's obligations under the Guaranty.

57. Mr. Choudhri is liable to NBK for Mr. Parker's obligations under the Guaranty.

58. Mr. Choudhri materially and substantially breached the Guaranty by failing to pay under the Guaranty as required upon an Event of Default.

59. As a result of Mr. Choudhri's breach of the Guaranty, NBK has suffered, and continues to suffer, damages.

60. NBK's damages flow directly from and are the natural and probable consequences of Mr. Choudhri's breach of obligations under the Guaranty.

61. NBK is entitled to a judgment against Mr. Choudhri for damages in the amount of no less than $51,950,597.68.

62. NBK is also entitled to recover reasonable and necessary attorneys' fees pursuant to the Loan Documents.

63. NBK is further entitled to recover pre-judgment interest at the rate established by the Loan Documents and post-judgment interest at the maximum legal rate.

## **PRAYER FOR RELIEF**

64. WHEREFORE, NBK asks this Court to enter judgment in its favor and to award the following relief:

   a. Entry of a declaratory judgment in favor of NBK and against Mr. Choudhri as set forth above;

   b. Entry of a money judgment in favor of NBK and against Mr. Choudhri consistent with the declaratory judgment and as set forth above;

  c.  Actual damages;

  d.  Pre- and post-judgment interest;

  e.  Attorneys' fees and costs; and

  f.  All other relief to which NBK is entitled, whether at law or in equity.

    [*Remainder of Page Intentionally Left Blank*]

Dated: November 20, 2025            Respectfully submitted,

**PILLSBURY WINTHROP SHAW PITTMAN LLP**

By: */s/ Charles C. Conrad*
Charles C. Conrad
Tex. Bar No. 24040721
S.D. Tex. Fed. ID No. 37220
L. James Dickinson
Tex. Bar No. 24105805
S.D. Tex. Fed. ID No. 3611267
Reed C. Trechter
Tex. Bar No. 24129454
S.D. Tex. Fed. ID No. 3803657
609 Main Street Suite 2000
Houston, TX 77002
Telephone: (713) 276-7600
Facsimile: (713) 276-7634
charles.conrad@pillsburylaw.com
james.dickinson@pillsburylaw.com
reed.trechter@pillsburylaw.com

*- and -*

Andrew M. Troop
Mass. Bar No. MA547179
S.D. Tex. Fed. ID No. 30089813
Patrick E. Fitzmaurice
N.Y. Bar No. 4093852
(*pro hac vice forthcoming*)
31 West 52nd Street
New York, NY 10019-6131
Telephone: (212) 858-1000
Facsimile: (212) 858-1500
andrew.troop@pillsburylaw.com
patrick.fitzmaurice@pillsburylaw.com

***Counsel for National Bank of Kuwait, S.A.K.P., New York Branch***